IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00311-MR

| TEVIN PATTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM OF DECISION AND ORDER** |
| LARRY SHIELDS, | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment. [Doc. 30].

**I.    PROCEDURAL BACKGROUND**

On October 19, 2021, Plaintiff Tevin Patton ("Plaintiff"), proceeding *pro se*, filed this action through an unverified Complaint pursuant to 42 U.S.C. § 1983 for the violation of his civil rights. [Doc. 1]. On December 13, 2021, after his original Complaint failed initial review, Plaintiff filed an unverified Amended Complaint against Defendant Larry Shields asserting an individual capacity Eighth Amendment claim based on the use of excessive force. [Docs. 8, 9]. The Amended Complaint passed initial review. [Doc. 10]. Plaintiff alleged that, on September 2, 2021, while he was incarcerated at

Foothills Correctional Institution ("Foothills CI") in Morganton, North Carolina, Defendant Shields pushed Plaintiff against a wall and placed him in a chokehold. [Doc. 9 at 5]. Plaintiff alleged to have suffered neck and back pain, sleeplessness, and depression from the incident. [Id.].

On November 2, 2022, Defendant filed a Motion for Summary Judgment. [Doc. 30]. Defendant argues that summary judgment should be granted because Defendant did not use excessive force on Plaintiff and because qualified immunity bars Plaintiff's claim against Defendant. [Doc. 31]. In support of his summary judgment motion, Defendant submitted a brief, his own Declaration, a Declaration of Counsel, various prison records, an incident report, witness statements, Plaintiff's post-incident medical record, the North Carolina Department of Public Safety (NCDPS)[1] Use of Force Policy, and video footage of the incident.[2] [Docs. 31, 31-1 to 31-2; 11/14/2022 Docket Entry].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in

---

[1] The North Carolina Department of Adult Corrections (NCDAC) has since replaced the NCDPS.

[2] Defendant filed the video footage as Exhibit E to Docket No. 31. The Court will hereinafter cite the video footage of the incident as "Ex. E."

which evidence could be submitted to the Court. [Doc. 34]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))].

Plaintiff did not respond to Defendant's motion. As noted, Plaintiff's Complaints were not verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered for their evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on

3

personal knowledge"). Thus, in terms of evidentiary forecast, Defendant's is unrefuted.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat

4

a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

## III. FACTUAL BACKGROUND

Defendant's uncontroverted forecast of evidence shows the following.

On or about November 4, 2019, Plaintiff was convicted of Robbery with a Dangerous Weapon, Assault with a Deadly Weapon, and two counts of Carry Concealed Weapon. He was sentenced to a term of imprisonment of three to five years with NCDPS. [Doc. 31-1 at 3-4]. Plaintiff is scheduled to be released in July 2023. [Id. at 4]. During his incarceration, he has received 13 disciplinary convictions, including two for assault with a weapon and four for gang involvement. [Id. at ]. Plaintiff is a known member of the "Bloods" Security Risk Group (SRG). [Doc. 31-1 at 7]. At the relevant time, Defendant Shields was employed as a Correctional Sergeant at Foothills CI. [Doc. 31-2 at ¶ 2: Shields Dec.].

On September 2, 2021, Plaintiff flooded his cell by stuffing large amounts of toilet paper into his toilet. While officers cleaned Plaintiff's cell, he was placed in the dayroom holding cell. While in the holding cell, Plaintiff made statements that he would "burn this place to the ground." [Doc. 31-2 at ¶ 3]. While Defendant Shields escorted Plaintiff back to his cell, Plaintiff continued to state that he was going to "burn this shit down." As Plaintiff and Defendant were walking through the dayroom gate, Plaintiff attempted to jerk away from Defendant, stating "Fuck yall, I do what I want." [Id.; see Ex. E].

6

To gain control of Plaintiff, Defendant briefly secured Plaintiff against a wall and other staff members assisted to secure Plaintiff. [Id.; Ex. E]. Defendant Shields then wrapped his left arm around Plaintiff's chin and his right hand on the back of Plaintiff's head to protect himself from being head butted or spit on, while other staff members continued to assist. Defendant did not appear to exert any unnecessary pressure on Plaintiff and moved in a controlled manner as Plaintiff appeared to offer some resistance. After approximately 20 seconds, Plaintiff abandoned his resistance and Defendant Shields released his hold on Plaintiff. [Id.; Ex. E]. Plaintiff was escorted to his cell without further incident. [Id.; Ex. E].

Plaintiff was provided a post use-of-force medical assessment by Robert Fox, RN. [See Doc. 31-1 at 29-31]. Nurse Fox reported that Plaintiff was not injured from the incident and that Plaintiff stated, "Nah. I'm not hurt. He just choked me." [Id. at 29]. The incident was reviewed by the Foothills CI Superintendent and the Regional Director. [Id. at 12-13]. Both concluded that Defendant acted appropriately and used only the minimal force necessary under the circumstances. [Id. at 12].

## IV. DISCUSSION

### A. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

Moreover, "[c]orrectional officers do not have to be under physical attack to justify the use of force; they can also use appropriate force 'to preserve internal order by compelling compliance with prison rules and procedures.'" Shiheed v. Harding, 802 Fed. App'x 765, 767 (4th Cir. 2020) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "'And we owe officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security.'" Id. (quoting Brooks, 924 F.3d at 112).

The forecast of evidence here plainly shows that Defendant Shields used only that force reasonably necessary to gain control of Plaintiff and restore order. Plaintiff had just flooded his cell, was making threats, and jerked away from Defendant Shields' grasp as Defendant tried to escort Plaintiff to his cell. Defendant Shields secured Plaintiff against a wall and then secured Plaintiff to prevent assault. Once Plaintiff abandoned his resistance, Defendant Shields released his grasp on Plaintiff and Plaintiff was escorted to his cell without further incident. The forecast of evidence, therefore, does not support that Defendant's use of force on Plaintiff was excessive. Moreover, there is no forecast of evidence that Plaintiff suffered any injury from the use of force. As such, there is no genuine issue of material fact as to Plaintiff's excessive force claim, and it will be dismissed.

## B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not presented a forecast of evidence that Defendant violated a constitutional right, Defendant is entitled to qualified immunity on Plaintiff's individual capacity claim. As such, summary judgment for Defendant would also be proper for Defendant on this ground.

## V. CONCLUSION

For the reasons stated herein, the Court will grant Defendant's motion for summary judgment.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 30] is **GRANTED** and this action is hereby **DISMISSED with prejudice**.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: April 24, 2023

Martin Reidinger
Chief United States District Judge